E-FILED
Wednesday, 11 November, 2026 03:45:59 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**

TODD RYAN GLISAN,

Plaintiff,

vs.

WOLFE, INC.,

Defendant.

Case No.: 1:26-cv-01490

**JURY TRIAL DEMANDED**

# COMPLAINT

Todd Ryan Glisan ("Plaintiff" or "Mr. Glisan") by and through his counsel brings the following Complaint against Wolfe, Inc. ("Defendant" or "Wolfe") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of an employment background check report that Defendant published to Plaintiff's potential employer, which falsely portrayed Plaintiff as a convicted felon.

## INTRODUCTION

1. This is an individual action for damages, costs, and attorney's fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2. Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports generated from its database and furnishes these consumer reports to employers who use the reports to make decisions regarding whether to offer employment to certain consumers.

3. Defendant falsely reported to Plaintiff's prospective employer that Plaintiff was convicted of felony intimidation under case no. 2023-CF-0000506. Defendant's reporting was materially inaccurate because the conviction does not belong to Plaintiff.

4. Plaintiff has no criminal record of his own.

5. Plaintiff's prospective employer denied Plaintiff's job application after receiving an employment background check report from Defendant, which included the inaccurate felony conviction, which does not belong to Plaintiff.

6. Defendant's inaccurate reporting could have been avoided had Defendant reasonably reviewed the identifying information in the criminal record before publishing Plaintiff's report to his prospective employer.

7. The face of Defendant's own report identified the person named in the criminal record as "GLISAN, TOBY R" and expressly warned "NOTE NAME DOES NOT MATCH," yet Defendant included that record in a report about Todd Ryan Glisan.

8. Defendant does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures resulted in Plaintiff's report being grossly inaccurate.

9. Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking employment by prejudicing their prospective employers with inaccurate criminal record information.

10. Defendant's inaccurate report caused Metro One to deny Plaintiff's application initially and delayed the remaining hiring steps. When Metro One resumed the process after the correction, Plaintiff was in Florida and unavailable to complete the drug screening. Metro One selected another candidate, and Plaintiff did not obtain the job.

11. As a result of Defendant's inaccurate report, Plaintiff suffered disruption of his employment opportunity, injury to his reputation with Metro One, time and effort spent correcting

the report, sleeplessness, and emotional distress, including anxiety, fear, frustration, humiliation, and embarrassment, together with any resulting economic loss established by the evidence.

12. Plaintiff brings this action under 15 U.S.C. § 1681e(b) for Defendant's failure to follow reasonable procedures to assure maximum possible accuracy when preparing the report published to Metro One on August 11, 2026.

## PARTIES

13. Todd Ryan Glisan ("Plaintiff" or "Mr. Glisan") is a natural person residing in Bartonville, Illinois, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

14. Defendant Wolfe, Inc. ("Defendant" or "Wolfe") is a North Carolina corporation doing business throughout the United States, including the State of Illinois and in this District, and has a principal place of business located at 681 Cabarrus Ave. West, Concord, NC 28027.

15. Among other things, Defendant sells background checks to employers for their use in deciding whether to offer employment to prospective employees or to take adverse action such as termination, failure to hire, or failure to promote. These reports are provided in connection with a business transaction initiated by the employer.

16. Defendant is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for employment purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

17. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

18. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

19. Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

20. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

21. Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

22. Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

//

## THE FCRA'S PROTECTIONS FOR JOB APPLICANTS

23. Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates employment background check reports like the one Defendant prepared in Plaintiff's name.

24. The FCRA provides a number of protections for job applicants who are the subject of background checks for purposes of securing employment, housing, and other purposes.

25. In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks, like Defendant, are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d) and (f).

26. The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

27. Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

28. Defendant disregarded its duties under the FCRA with respect to Plaintiff's background check report.

## DEFENDANT'S ILLEGAL BUSINESS PRACTICES

29. Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data. As a result of the increasing availability of this data, there has been a boom in the background check industry.

30. As summarized in a recent report by the Consumer Financial Protection Bureau, a 2018 survey of employers found that 95 percent of employers surveyed conducted one or more types of background screening. CFPB Report at 4.

31. The criminal background check industry takes in revenues in excess of three billion dollars, annually.

32. Criminal background checks are generally created by running automated searches through giant databases of aggregated criminal record data. The reports are created and disseminated with little to no manual, in-person review, and the court records are rarely directly reviewed in creating criminal background checks.

33. Background check companies, like Defendant, collect millions of criminal records from a number of sources with data from county, state, and federal level sources. The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

34. Given that Defendant is in the business of selling background checks, Defendant should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

35. Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

36. Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

37. Defendant charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

38. Appropriate quality control review of Plaintiff's report would have revealed the different first and middle names and the express warning that the name did not match.

39. Defendant's report itself disclosed the name mismatch before publication. Nevertheless, Defendant furnished the felony conviction to Metro One as part of Plaintiff's background check.

## FACTS

### Plaintiff Applies for a Job with Metro One

40. On or about August 5, 2026, Plaintiff applied for part-time employment as a Security Guard with Metro One. The position was approximately 16 hours a week and paid $17 an hour.

41. Plaintiff works full-time at Garden Security and sought a second job to supplement his income. The Metro One position's part-time schedule and pay made it a particularly suitable opportunity.

42. Plaintiff is the main income earner in his household. Although his children are adults, he helps his eight grandchildren with school-related expenses, including school supplies and clothing.

43. Plaintiff also sought the additional income to catch up on his property taxes. At approximately 16 hours per week and $17 per hour, the Metro One position offered approximately $272 in gross weekly supplemental earnings.

44. Plaintiff applied for the Metro One position online through Indeed. Plaintiff successfully completed a telephone interview.

45. On or about August 6, 2026, Metro One extended him a conditional job offer and sent instructions for completing the remaining hiring requirements, including a background check and drug screening.

**Defendant Published an Inaccurate Background Check Report to Metro One**

46. Metro One contracted with Defendant to conduct background checks, including criminal background checks, on its prospective employees.

47. On or about August 6, 2026, Metro One ordered a criminal background check on Plaintiff from Defendant.

48. On or about August 11, 2026, in accordance with its standard procedures, Defendant completed its consumer report about Plaintiff and sold the same to Metro One.

49. Within that consumer report, Defendant published inaccurate information about Plaintiff.

50. Specifically, Defendant's consumer report about Plaintiff included a grossly inaccurate and stigmatizing felony intimidation conviction from Peoria County, Illinois, which appeared in the consumer report as follows:

**Investigative**

**County Criminal Records Search**

| | | | |
|---|---|---|---|
| RESULTS | **Records Found** | | |
| NAME SEARCHED | GLISAN, TODD RYAN | SEARCH DATE | 08-11-2026 8:40 AM MDT |
| DOB SEARCHED | 02-25-XXXX | SEARCH SCOPE | 7 Years |
| JURISDICTION | IL-PEORIA | | |

***** Abstract *****

| | | | |
|---|---|---|---|
| NAME ON RECORD | GLISAN, TOBY R | CASE NUMBER | 2023-CF-0000506 |
| DOB ON RECORD | 1977-02-25 | COURT | Peoria, IL - IL PEORIA COUNTY IL - PEORIA COUNTY CIRCUIT COURT; |
| OTHER IDENTIFIERS | Matched By: NAME ON FILE (GLISAN, TOBY R); NOTE NAME DOES NOT MATCH; DOB ON FILE (2/25/1977); | FILE DATE | 2023-07-05 |
| OTHER INFO | | | |

**Count**

| | | | |
|---|---|---|---|
| TYPE | CLASS 3 FELONY | OFFENSE | INTIMIDATION (CHARGE IS THE SUBSTANTIVE OFFENSE CITED) |
| DISPOSITION | GUILTY | | |
| DISPOSITION DATE | 2023-08-10 | OFFENSE DATE | 2023-07-01 |
| SENTENCE | Sentence: | | Sentence: Illinois Department of Corrections - Court Sentenced4 Years Sentences: DOC (Judicial Officer: Gorman, Katherine S): IL Criminal Comment: 0-1YR MSR/DAY FOR DAY TO APPLY/CFTS 7/5/23-8/10/23 Condition - Adult: 1. 301 Fine and/or Cost/Penalties and Fees, 08/10/2023, 08/10/2023 |
| | Comments: | | SENTENCES: DOC (JUDICIAL OFFICER: GORMAN, KATHERINE S): IL CRIMINAL COMMENT: 0-1YR MSR/DAY FOR DAY TO APPLY/CFTS 7/5/23-8/10/23 CONDITION - ADULT: 1. 301 FINE AND/OR COST/PENALTIES AND FEES, 08/10/2023, 08/10/2023 \| ALL FEES: FEES:FEE TOTALS: SCHEDULE 1$549.00 FEE TOTALS $$549.00 \| SENTENCE START DATE: 8/10/2023 12:00:00 AM; Final Disposition Date: 08/10/2023; Offense Date: 07/01/2023; Statute: 720 ILCS 5/12-6(a)(3) |
| OTHER INFO | | | |
| COMMENT | | | |

51. The felony conviction reported by Defendant about Plaintiff to Metro One does not belong to Plaintiff.

52. Plaintiff has no criminal record of his own and was not convicted in case no. 2023-CF-0000506.

53. A cursory review of the widely available public court records confirms that the records belong to Plaintiff's twin brother, Toby Ray Glisan ("Convicted Felon Glisan"), whose name appears on the face of the report.

54. Defendant's report disclosed an obvious discrepancy between Plaintiff's name and the name associated with the felony conviction.

55. The identifying information and warning appearing on the face of Defendant's report should have prompted further review before Defendant attributed the conviction to Plaintiff:

(a) Plaintiff's legal name is "Todd Ryan Glisan," whereas the criminal record identifies "GLISAN, TOBY R," a person with different first and middle names;

(b) Plaintiff's Social Security number, which was provided to Defendant is contained on the face of the subject consumer report is entirely different than that of Convicted Felon Glisan.

56. Defendant's report expressly states "NOTE NAME DOES NOT MATCH." Despite that warning, Defendant included the felony conviction in Plaintiff's consumer report.

57. The sole reason the inaccurate criminal records were reported as belonging to Plaintiff was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the consumer report it sold about Plaintiff to Plaintiff's prospective employer.

58. Reasonable procedures would have required Defendant to resolve the express name mismatch and verify the identity of the person convicted before including the conviction in Plaintiff's report.

59. In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Plaintiff's prospective employer inaccurate information about Plaintiff, Defendant failed to follow reasonable procedures to assure that the report was maximally accurate, in violation of 15 U.S.C. § 1681e(b).

**Metro One Denies Plaintiff's Job Application**

60. On or about August 14, 2026, Plaintiff received an email from Defendant notifying him of a message concerning his background check. Through Defendant's website, Plaintiff accessed a pre-adverse action notice and a copy of the report.

61. Plaintiff was shocked and humiliated to discover that Defendant had furnished Metro One with a report falsely associating him with another person's felony intimidation conviction.

62. On or about August 14, 2026, Plaintiff asked Metro One's human resources representative, Kelly Harris, whether he had passed the background check. Ms. Harris told Plaintiff that he had not.

63. Plaintiff explained to Ms. Harris that the criminal record did not belong to him and that he believed it belonged to his twin brother.

64. Ms. Harris told Plaintiff that he would need to clear his record for future consideration.

65. When Plaintiff inquired how to have his consumer report corrected, Ms. Harris told him he would need to contact the State and likely would need to get an attorney to assist him.

66. Plaintiff was panicked, confused, and concerned that being falsely identified as a convicted felon would impair his ability to obtain the security guard job and other employment.

67. Defendant had the contradictory identifying information and express name-mismatch warning before publishing the report. Nevertheless, Defendant attributed the conviction to Plaintiff and communicated it to the employer evaluating his application.

**Plaintiff Disputed the Misinformation in Defendant's Consumer Report**

68. On or about August 17, 2026, desperate to secure employment with Metro One and riddled with worry over the far-reaching impacts of being confused with a convicted felon, Plaintiff disputed the inaccurate information with Defendant by email.

69. Plaintiff identified himself and provided information to Defendant to support his dispute.

70. Plaintiff specifically disputed the felony conviction in case no. 2023-CF-0000506.

71. Plaintiff specifically stated that the criminal record did not belong to him.

72. Plaintiff asked Defendant to investigate and remove the other consumer's criminal record from his report.

73. On August 20, 2026, Defendant responded to Plaintiff's dispute and corrected the report by removing the criminal case that did not belong to him.

74. On August 21, 2026, Plaintiff received a text message from Metro One advising that his background check had been updated.

75. Metro One in its text let Plaintiff know that it would be sending Plaintiff his drug screening via Federal Express to complete.

76. Plaintiff explained that he was in Florida until August 28, 2026.

77. Metro One advised Plaintiff that the denial had been reversed. However, when Metro One contacted Plaintiff to complete the drug screening, he was out of state in Florida and unavailable to complete it. Metro One ultimately selected another candidate, and Plaintiff did not obtain the position.

78. Defendant's inaccurate report caused the initial denial and delayed Plaintiff's progress through the hiring process until after the report was corrected. When Metro One resumed the remaining hiring steps, Plaintiff was in Florida and unavailable for the drug screening, and Metro One proceeded with another candidate.

79. Defendant's inaccurate report and the resulting initial denial disrupted the timing of his hiring process and contributed to the loss of the Metro One employment opportunity. The position would have provided approximately $272 in gross supplemental earnings per week at the anticipated schedule of 16 hours per week.

80. Due to Defendant's unreasonable procedures Plaintiff lost out on the Metro One part-time position, which intensified Plaintiff's financial concerns about catching up on property

taxes and helping his grandchildren with school expenses. Plaintiff had sought the position specifically to meet these needs.

81. Plaintiff and his family have had ongoing issues involving his brother over the past ten years.

82. The false attribution of his brother's felony conviction to Plaintiff revived distressing memories of family difficulties and added to his emotional distress.

83. Plaintiff served approximately seventeen and one-half years in the United States Marine Corps and was honorably discharged in December 2003 for medical reasons involving asthma, allergies, and post-traumatic stress disorder.

84. Plaintiff suffered stress from having another person's felony conviction attributed to him and from having to navigate the correction process while the supplemental employment he needed was in jeopardy.

85. The stress of the false report, initial employment denial, and revived memories of problems involving his brother caused Plaintiff to experience sleeplessness.

86. Plaintiff discussed the extreme stress and sleeplessness with his doctor, and his doctor prescribed him medication to help him sleep.

87. The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

88. As a result of Defendant's inaccurate report, Plaintiff suffered injury to his reputation with Metro One, disruption and delay of his hiring process, time and effort spent explaining and disputing the false conviction, loss of sleep, and emotional distress, including

anxiety, fear, frustration, humiliation, and embarrassment. Following the initial denial and correction, Metro One resumed the hiring process while Plaintiff was in Florida and unavailable for the drug screening, then selected another candidate. Plaintiff alleges that the reporting error and resulting delay contributed to the loss of the position and its anticipated supplemental income. His distress was intensified by his need for those earnings to address property taxes and family expenses. Plaintiff seeks recovery of lost wages and other economic losses attributable to Defendant's inaccurate reporting, in an amount to be established through the evidence.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

89. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

90. Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

91. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

92. At all times pertinent hereto, the above-mentioned consumer report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

93. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the consumer report it sold about Plaintiff as well as the information it published within the same.

94. As a direct and proximate result of Defendant's violation of § 1681e(b), Plaintiff suffered the actual damages described above, including reputational injury, disruption and delay of the hiring process, time and effort spent addressing the false report, sleeplessness, and emotional

distress. Plaintiff further alleges that the reporting error and resulting delay contributed to the loss of the Metro One position, and seeks the lost wages and other economic losses attributable to that error, in an amount to be established through the evidence.

95. Defendant's violation was willful because, on information and belief, it knowingly or recklessly furnished the felony conviction as part of Plaintiff's report despite the different name and the express warning "NOTE NAME DOES NOT MATCH." Plaintiff seeks actual damages or, alternatively, statutory damages, together with punitive damages and reasonable attorneys' fees and costs under 15 U.S.C. § 1681n. Alternatively, Defendant's failure to follow reasonable procedures was negligent, entitling Plaintiff to actual damages and reasonable attorneys' fees and costs under 15 U.S.C. § 1681o.

96. Defendant's August 20, 2026, correction did not undo the prior publication of the inaccurate report, Metro One's initial denial, or the resulting harm to Plaintiff.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

i. Determining that Defendant negligently and/or willfully violated the FCRA;

ii. Awarding Plaintiff actual damages under 15 U.S.C. § 1681o or, upon a finding of willfulness, actual damages or alternatively statutory damages, together with punitive damages under 15 U.S.C. § 1681n;

iii. Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv. Granting such other relief as this Court deems appropriate and available under applicable law.

**DEMAND FOR JURY TRIAL**

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Dated: November 11, 2026

By: *<u>/s/ Tarek N. Chami</u>*
Tarek N. Chami – MI# P76407
CONSUMER JUSTICE LAW FIRM PLC
835 Mason St, Suite C349
Dearborn, MI 48124
T: (313) 447-0488
E: tchami@consumerjustice.com

*Attorneys for Plaintiff*
*Todd Ryan Glisan*